IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

CHRIS CHAD OLSON,

            Plaintiff,

  v.                                             Case No. 14-1212-RDR

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

            Defendant.

**MEMORANDUM AND ORDER**

On January 18, 2011, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of August 10, 2010. On July 17, 2012, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on August 20, 2012 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

I.  STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social

Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file.  20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004).  "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th

Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 19-27).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 20-21).  First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her

residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied on the basis of the fourth and fifth steps of the evaluation process. The ALJ determined that plaintiff maintained the residual functional capacity to perform his past relevant work as a store manager and that plaintiff could perform other jobs that constitute substantial gainful employment.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2013. Second, plaintiff did not engage in substantial gainful activity after August 10, 2010, the alleged onset date of disability. Third, plaintiff has the following severe impairments: history of stroke, seizure disorder and substance abuse disorder in remission. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P,

4

Appendix 1. Fifth, plaintiff has the residual functional capacity to perform the full range of work at all exertional levels with the following limitations: never climb ladders, ropes or scaffolds, and avoid all exposure to work around hazards. Finally, the ALJ determined that plaintiff is able to perform his past relevant work as a retail store manager as well as other jobs existing in the national economy, such as hand packer, cashier and surveillance monitor.

III. THE ALJ DID NOT IMPROPERLY IGNORE THE EVIDENCE OF PLAINTIFF'S BROKEN LEG.

Plaintiff's predominant argument to reverse the decision to deny benefits is that the ALJ ignored evidence that plaintiff had a seizure or loss of consciousness, fell, and broke his left leg on May 9, 2012. He had surgery upon the leg a few days later. This was approximately two months before plaintiff's administrative hearing. Plaintiff asserts that his broken leg diminished plaintiff's residual functional capacity and that the ALJ erred when he failed to consider it.

A. <u>Evidence regarding plaintiff and his broken leg</u>

Plaintiff was born in 1973. He was 37 years old in 2010. Plaintiff testified that his last job was as a health club maintenance manager in 2010 and that he worked Monday through Saturday from 6:00 a.m. to 6:00 p.m. and was on call as well. He testified that he had a stroke event in February 2010 and

5

doesn't have the physical capability to do the work he performed at the health club anymore. (Tr. 42). When asked by his counsel what about his health was keeping plaintiff from going back to work, plaintiff replied: "Major issues with anxiety and just overall depression." (Tr. 46). Plaintiff testified that he had difficulty interacting with people and that he was preoccupied or obsessed with organizing things to the extent that he has missed appointments. (Tr. 46-49). He described his "most recent" episode or seizure when he fell and broke his leg, and had "no recollection of what was going on." (Tr. 61-66). Plaintiff testified that he has "a nail and screws holding my left leg together from the knee cap down to my ankle." (Tr. 62). Plaintiff stated that "Now, it's just bad walking." (Tr. 63).

At the beginning of the administrative hearing, plaintiff's counsel made an opening statement which discussed plaintiff's impairments, but did not directly mention plaintiff's broken leg. Counsel, however, did add that plaintiff "has fresh medical from Wesley Medical Center that I'll submit post-hearing." (Tr. 37). At the close of the administrative hearing, the ALJ remarked that "it's important for me to look at this new information and to evaluate that." (Tr. 71). He asked plaintiff's counsel to transmit the recent medical records to

him.  Id.  The Wesley Medical Center documents include records pertaining to plaintiff's broken leg.

Plaintiff's treating doctor, Dr. Matthew Harris, gave an opinion on June 21, 2012 that plaintiff suffered from seizures for which he had been prescribed anti-epileptic medication; that his impairments were expected to last for at least six months; but that he could perform full-time work with seizure precautions in a safe environment.  (Tr. 556).  Plaintiff's complaints to Dr. Harris centered upon recurrent syncope.  Dr. Harris mentioned plaintiff's fall in May 2012 which resulted in a "fractured left hip."[1]  (Tr. 560).  Dr. Harris listed plaintiff's past medical history as:  1) hypertension; 2) depression; 3) recurrent syncope since 2010; and 4) questionable history of stroke, CVA."  Id.  Dr. Harris listed plaintiff's past surgical history as "Open reduction internal fixation of left tib-fib May 2012."  Id.

The records regarding plaintiff's surgery for his broken left leg indicate that plaintiff handled the procedure well with no complications.  (Tr. 567 & 575).  On May 22, 2012, plaintiff was observed walking slowly with a soft cast.  (Tr. 663).

B.  <u>The court may assume that the ALJ considered the evidence of plaintiff's broken leg.</u>

---

[1] This appears to be a typo or error in transcription.  Plaintiff's fracture was in the lower leg.

7

The ALJ did not mention plaintiff's broken leg in his opinion. He did state, however, that he carefully considered all of the evidence (Tr. 19) and we may take him at his word. Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009). This does not seem to be a leap of faith since plaintiff testified about his broken leg before the ALJ and the treating physician mentioned the broken leg in an exhibit referred to in the ALJ's decision.

   C.  The ALJ did not err by failing to consider plaintiff's broken leg as a severe impairment.

At step two, a claimant must provide evidence of an impairment and its severity. 20 C.F.R. §§ 404.1512(c), 416.912(c). To be "severe" an impairment or combination of impairments must last for a continuous period of at least 12 months. §§ 404.1509, 416.909. Only a de minimus showing of severity is required. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). But, at step four, plaintiff must also show that the combination of plaintiff's impairments prevent plaintiff from returning to his past relevant work for twelve months. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(the duration requirement applies to the inability to engage in substantial gainful activity, not just an underlying impairment).

In this instance, plaintiff introduced evidence that he suffered a broken leg. But, as defendant argues, plaintiff did

not introduce evidence that his broken leg had a substantial potential of impairing his ability to perform substantial gainful activity or to return to his previous work for a period longer than 12 months. Therefore, the ALJ did not err when he failed to list the broken leg as a severe impairment or consider the impact of the broken leg in determining plaintiff's RFC. See Wall, 561 F.3d at 1063 (evidence of memory problems was not sufficient to show substantial issue that problems caused a failure to obtain substantial work); Moore v. Astrue, 2010 WL 2044660 *4-5 (D.Kan. 4/27/2010)(plaintiff failed to show substantial memory problems continued for twelve months and thus did not demonstrate a severe impairment); Wright v. Astrue, 2008 WL 4500261 *2 (W.D.Ky. 9/29/2008)(ALJ properly discounted recently broken right wrist which did not appear to meet the duration requirement); Coleman v. Astrue, 2008 WL 1735391 *10 (D.Kan. 4/14/2008)(evidence of depression reflected twice in treatment notes over two months does not demonstrate a severe impairment); Valdez v. Barnhart, 2004 WL 1846220 *1 (D.Kan. 5/3/2004)(record failed to show that numerous conditions existed for more than 12 months or that they combined to limit substantial work activity for more than 12 months).

   Plaintiff insists that defendant's reliance upon the 12-month duration requirement is an improper post-hoc rationalization. The court, of course, is aware that we may not

create or adopt post-hoc rationalizations to support an ALJ's decision that are not apparent from the decision itself.  Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007).  The court is also aware that the ALJ is not required to discuss every piece of evidence.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  An ALJ is required "to discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  Id. at 1010.  The court assumes that the requirement of discussing uncontroverted evidence (such as the broken leg) applies only to evidence which is material to the issues in the case.

In this instance, the ALJ chose not to discuss or rely upon the evidence of plaintiff's broken leg.  If there was a substantial question in the record as to whether plaintiff's broken leg was a "severe impairment" which would last twelve months or more, then the court would find that an error was committed which justifies a reversal of the decision to deny benefits.  Plaintiff had the burden of showing that the broken leg was a material or substantial issue on its face.  See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997).  Here, plaintiff did not raise a substantial issue on its face that plaintiff's broken leg constituted a severe impairment.  Therefore, the ALJ did not commit error in failing to discuss plaintiff's broken leg in his decision.

For these reasons, the court finds that the ALJ did not commit a legal error or make an unreasonable judgment in determining plaintiff's "severe impairments" or plaintiff's residual functional capacity in spite of the evidence of plaintiff's broken leg.

IV. PLAINTIFF HAS NOT DEMONSTRATED ERROR IN THE ALJ'S CREDIBILITY FINDINGS.

The ALJ determined that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (Tr. 24). Plaintiff contends that the evidence of his left leg fracture lends credibility to plaintiff's subjective descriptions regarding his seizure symptoms.

As already noted, the court believes that the ALJ did consider plaintiff's broken leg. The record also demonstrates that the ALJ determined that plaintiff had a seizure disorder and placed limitations upon plaintiff's residual functional capacity which acted as precautions in the event of seizures. Under these circumstances, the court does not find that the failure to discuss plaintiff's broken leg reflects a reversible error in the ALJ's credibility analysis of plaintiff's seizure disorder testimony. Generally, credibility determinations are the function of the ALJ and such determinations are not

11

overturned "when supported by substantial evidence." Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010)(interior quotations and citations omitted). This is an "on-balance" analysis. Substantial evidence may exist even when some aspects of an ALJ's credibility determination are mistaken. See Pickup v. Colvin, 2015 WL 1515460 *1 (10th Cir. 4/6/2015)(citing Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004)). The court is convinced by our review of the record, including the treating physician's report and the function reports, that the ALJ's credibility analysis is supported by substantial evidence.[2]

V. PLAINTIFF HAS NOT DEMONSTRATED ERROR IN THE ALJ'S ANALYSIS OF PLAINTIFF'S ALLEGED SOCIAL RESTRICTION AND OBSESSIVE COMPULSION DISORDER.

Plaintiff contends that the ALJ did not give adequate consideration to evidence of "social restriction and solitary behavior" and "obsessive compulsion disorder." Doc. No. 14, p. 17. Plaintiff testified that he doesn't want to get out in public and be around people; that he secludes himself in his studio apartment; and that having visitors is a nerve wracking

---

[2] As mentioned, the treating physician's report stated that plaintiff could return to full-time work with seizure precautions. Plaintiff's friend completed a function report indicating that plaintiff cooks simple meals; performs simple household chores and yard work; shops; handles money; can follow instructions; goes on daily walks; and spends time with others on a daily basis. (Tr. 320-27). Plaintiff completed a function report (Tr. 297-304) which indicated that he can do physical activities which do not require stairs or lifting; that he walks and performs light exercises; and that he spends time with friends and family. The report stated that he can lift only less than 50 pounds; that he can walk a mile or so without resting; that squatting and kneeling cause dizziness; and that tremors make the use of his hands more difficult. In general, plaintiff's report indicated that he used to be extremely active and that, because of medical issues, he lost everything, became homeless, and now his body shuts down if he pushes it.

12

experience. (Tr. 46-48). He also testified that he has spent days cleaning and organizing things over and over again and that this compulsion has caused him to miss appointment several times. (Tr. 47-49).

The ALJ found that plaintiff has a "mild" restriction in activities of daily living; "mild difficulties" in social functioning – noting that plaintiff indicated in his function report that he spends time with friends and family on a daily basis and regularly goes to the community center; and "moderate difficulties" with regard to concentration, persistence or pace. (Tr. 22). The ALJ also noted that plaintiff's mental health treatment reports show: fair or intact memory, attention and concentration; average intelligence; and moderate GAF scores. (Tr. 24). The function report from plaintiff's friend indicates, as mentioned by the ALJ, that plaintiff spends time with others on a daily basis, follows instructions and gets along with authority figures. (Tr. 25). Plaintiff's function report further records that plaintiff follows written and spoken instructions at least fairly well and gets along very well with authority figures. (Tr. 302-03).

Plaintiff's argument is asking the court to reweigh the evidence and reconsider the ALJ's assessment of plaintiff's credibility. The court's job is to determine whether the ALJ's factual findings are supported by substantial evidence and

13

whether the correct legal standards were applied; not to reweigh the evidence or substitute our judgment for that of the agency. Mays v. Colvin, 739 F.3d 569, 571 (10th Cir. 2014)(interior quotation omitted); Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013)(interior quotation omitted).  Our review of the record persuades the court that the ALJ followed the applicable legal standards and that his factual findings are supported by substantial evidence.

VI.  CONCLUSION

For the above-stated reasons, the court shall affirm defendant's decision to deny plaintiff's applications for benefits.

**IT IS SO ORDERED.**

Dated this 28th day of May, 2015, at Topeka, Kansas.

s/RICHARD D. ROGERS
Richard D. Rogers
United States District Judge